[No. 8421. Department One. January 21, 1910.]

INLAND NURSERY AND FLORAL COMPANY, *Appellant*, v. H. C. RICE *et al., Respondents.*[1]

CORPORATIONS—STOCK—CANCELLATION—FRAUD—COMPLAINT — SUF-FICIENCY. In an action by a corporation to cancel corporate stock issued to promoters in trust for the corporation, and fraudulently exchanged by them for property taken at an overvaluation, a complaint alleging fraudulent representations, whereby subsequent stockholders were induced to take corporate stock, is demurrable for want of sufficient facts, where it fails to allege that the subsequent stockholders did not have opportunity to investigate the value of the property, or did not receive full value for their stock, and no rights of creditors were involved; since the fraud did not cause any actionable injury.

CORPORATIONS—STOCK—EXCHANGE FOR PROPERTY—OVERVALUATION. A corporation cannot maintain an action to cancel stock issued to its promoters in exchange for property taken at an overvaluation, where no rights of creditors are involved and subsequent stockholders obtained full value in the purchase of their stock; and it is immaterial that the promoters were trustees of the corporation and in a measure dealing with themselves.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered July 15, 1909, dismissing an action to cancel corporate stock, upon sustaining objections to the admission of evidence. Affirmed.

*Peacock & Ludden*, for appellant.

*A. E. Barnes* and *E. O. Connor*, for respondents.

*E. L. Rice*, respondent *pro persona.*

[1]Reported in 106 Pac. 499.

MORRIS, J.—The purpose of this action was to cancel the stock of appellant, now held by respondents, upon the ground that the same was fraudulently issued. The issues being framed, the court below, at the time of the hearing, sustained respondents' objection to the introduction of evidence, upon the ground that the amended complaint did not state facts sufficient to constitute a cause of action, and this appeal was taken from the judgment of dismissal.

The allegations of the amended complaint reviewed by the ruling of the court are, that H. C. Rice and J. H. Mumm were formerly engaged in the nursery business at Spokane, and on June 11, 1907, they organized the appellant company with a capital stock of $50,000, divided into one hundred shares of the par value of $500; that immediately after filing articles of incorporation, the original incorporators, H. C. Rice, J. H. Mumm, J. M. Harris, and E. L. Rice, who were the trustees named, subscribed for all the capital stock of the company, H. C. Rice subscribing for forty-nine shares, J. H. Mumm subscribing for forty-nine shares, and E. L. Rice and J. M. Harris for one share each, it being further alleged that this was a trust subscription for those who should thereafter purchase such capital stock; that thereupon officers were elected as follows: J. H. Mumm president, E. L. Rice vice president, H. C. Rice treasurer, and J. M. Harris secretary; that H. C. Rice and J. H. Mumm, representing themselves as owners of certain nursery stock, good will, and buildings of the value of $25,000, turned this property over to the company at such valuation, in exchange for capital stock of the company of the par value of $25,000; that the nursery stock, good will, and buildings so transferred are not worth to exceed the sum of $2,000, and that the representations of value by Rice and Mumm were wrongful and fraudulent and in violation of their trust as trustees of the company, and that the exchange of the property for the stock was a fraudulent conspiracy to defraud the appellant; that subsequently Rice and Mumm, fraudulently represent-

ing that they had paid the company the full sum of $25,000, induced others to subscribe for stock and to pay the par value for same, to the amount of $17,000.

The gist of the action, and the act around which the alleged fraud centers, is the exchange of the property of Rice and Mumm for stock of the company at a valuation of $25,-000. While the complaint alleges such act to be fraudulent, there is no sufficient allegation of facts in connection therewith to afford the appellant the relief it here seeks. Fraud to be actionable must result in injury, and it nowhere appears that injury has resulted to any one because of such exchange. It does not appear but that subsequent stockholders purchased with full opportunity for investigation into the condition and assets of the company, and that the stock they purchased was fully worth the sum paid therefor. If, therefore, subsequent stockholders obtained full value, there can be no element of injury or fraud as to them. No complaint is made as to creditors.

The mere fact, notwithstanding it is alleged as wrongful and fraudulent, that the promoters of the company exchanged their property for stock of the company at a price agreed upon between themselves and the company, no rights of creditors being involved and subsequent stockholders obtaining full value in the purchase of their stock, gives no right of action in the company to subsequently cancel such promoters' stock upon the mere allegation of less valuation. The company had no property until it received the property of Rice and Mumm in exchange for its stock. Such property was of no greater or less value subsequent to the exchange than before. It would sell for no more as the nursery stock of the company than it would as the nursery stock of Rice and Mumm, and hence could give to their stock no greater real value than the property itself. It is well established that a corporation issuing stock as fully paid by a transfer of property cannot thereafter treat it as partly paid; and upon the same reasoning it is held that, in the absence of actual

fraud, a corporation cannot maintain an action to cancel shares of stock issued in exchange for property, upon the ground that the property was not actually worth the valuation placed upon it. *Iowa Drug Co. v. Souers*, 139 Iowa 72, 117 N. W. 300, 19 L. R. A. (N. S.) 115, and cases cited in note. The appellant here, having placed its own valuation on the property at the time of the transfer for its stock, cannot now complain upon the ground of an overvaluation.

"Whatever may have been in fact the value of the property turned over to the company for its stock, the company agreed to take it for the stock. The persons interested were the stockholders, and there was no dissent on the part of any person concerned from what was then done. Neither any person then holding stock, nor any person who afterwards became a stockholder by assignment from one who then held stock can now make complaint on behalf of the corporation, as against the fairness of that transaction. This I take it to be the settled law on that subject." *Northern Trust Co. v. Columbia Straw-Paper Co.*, 75 Fed. 936.

See, also, *Wells v. Green Bay & M. Canal Co.*, 90 Wis. 442, 64 N. W. 69; *John R. Proctor Land Co. v. Cooke*, 103 Ky. 96, 44 S. W. 391; *Scovill v. Thayer*, 105 U. S. 143; Clark & Marshall, Corporations, pp. 1363, 1364.

The fact that Rice and Mumm were the owners of the property and trustees of the corporation, and thus in a measure dealing with themselves, does not of itself render the transfer fraudulent and permit the corporation to now cancel their stock. The case of *Old Dominion Copper Min. Co. v. Lewisohn*, 210 U. S. 206, in passing upon a question similar to the one here suggested, says, at page 212:

"At the time of the sale to the plaintiff [the corporation] then, there was no wrong done to any one. Bigelow, Lewisohn and their syndicate were on both sides of the bargain, and they might issue to themselves as much stock in their corporation as they liked in exchange for their conveyance of their land."

In *Turner v. Bailey*, 12 Wash. 634, 42 Pac. 115, this court held that, where fully paid stock is issued for property re-

ceived by a corporation, there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account; and in *Kroenert v. Johnston*, 19 Wash. 96, 52 Pac. 605, the rule is announced that, where on the organization of a corporation, real estate is turned over by a stockholder in payment of his stock, at double its real value, and such valuation is accepted without any intention of defrauding existing or subsequent creditors, such stockholder is not liable for the difference between the face value of his shares and the actual value of the real estate.

These cases are decisive of the question before us on this appeal, and the judgment is affirmed.

RUDKIN, C. J., CHADWICK, FULLERTON, and GOSE, JJ., concur.