[No. 11181.    Department One.    January 17, 1914.]

GOLD RIDGE MINING AND DEVELOPMENT COMPANY,
Respondent, v. H. J. RICE, Appellant.[1]

APPEAL—PRESERVATION OF GROUNDS — WAIVER OF OBJECTIONS—PLEADING. Objection that a counterclaim was not pleaded is not available on appeal, where the evidence was admitted without objection, since the issues became as broad as the evidence.

CONTRACTS—CONSTRUCTION. An agreement that the defendant might draw against the proceeds of the sale of his stock, sold for him by the plaintiff, is not affected by the fact that part of the proceeds is represented by the purchaser's promissory note, where plaintiff had pledged the note as collateral and claimed to own it.

[1]Reported in 137 Pac. 1001.

CORPORATIONS—STOCK — SUBSCRIPTIONS —PAYMENT IN PROPERTY—
CONSIDERATION. A sale to a mining corporation, by two of its trus-
tees, of a bond upon a group of mining claims, in full consideration
of their stock subscriptions, unanimously agreed to by the trus-
tees, is valid as between the parties, where no rights of creditors
are involved, the deal was in the open, and no one was wronged.

CORPORATIONS — STOCK—SALE — VALIDITY—ESTOPPEL. A corpora-
tion receiving and holding the proceeds of the sale of its stock
cannot assert that the sale was not binding upon it.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered October 26, 1912, upon
findings in favor of the plaintiff, in an action on contract,
tried to the court. Reversed.

*N. C. Bardsley* and *Fred H. Witt*, for appellant.

*Willis E. Reed, M. O. Rced*, and *Robertson & Miller*, for
respondent.

Gose, J.—This action was brought to recover $1,663.59
from the defendant, which it is alleged he drew from the
bank account of the plaintiff in excess of the amount due
him for his services as its general manager. The answer is
in effect a general denial. The court found that the de-
fendant had drawn from the plaintiff's bank account
$1,030.29 in excess of the amount due him, and entered a
judgment against him for that amount, with interest and
costs of suit. The defendant has appealed.

The appellant asserts a counterclaim of $1,500, the pro-
ceeds of 7,000 shares of his stock which were sold by the
respondent's secretary and treasurer with the consent of
the appellant and retained by the respondent under an
agreement that the plaintiff could draw against it. The re-
spondent meets this claim in four ways; (a) that the coun-
terclaim is not pleaded; (b) that the appellant paid nothing
for his stock; (c) that the sale of the stock to the extent of
$1,000 is represented by a note which has not been paid, and

(d) that the sale of appellant's stock is not binding upon respondent.

In respect to the contention that the counterclaim is not pleaded, it is sufficient to say that the evidence was admitted without objection, and, under the uniform decisions of this court, the issues became as broad as the evidence.

Upon the third contention, that $1,000 of the stock is represented by an unpaid note, the evidence shows, that the note was drawn in favor of the respondent, that it was using it as collateral at the time of the trial, and that it claims to own it.

The principal contention is that the appellant paid nothing for the stock, and hence that he was not entitled to the proceeds of the 7,000 shares which represent the $1,500. This was the view taken by the trial court. The facts in brief are these: The appellant held a bond upon the "Wonder" group of mining claims, situate in the Ten Mile mining district, in Idaho county, in the state of Idaho. One A. A. Hammer, although not named in the bond, appears to have had some interest with the appellant. The appellant, Hammer, and one Stone organized the respondent corporation. They were its first trustees. The appellant was elected president and general manager, and continued in that capacity until January 22, 1912. Hammer was elected its secretary and treasurer, and held these offices at the time of the trial. The minute book of the respondent shows that Hammer made a written offer to the respondent to assign the bond to it for 200,000 shares of its capital stock, 100,000 to himself and 100,000 to appellant, its capital stock being 300,000 shares, the respondent "to assume and carry out all the terms of said bond . . . and that said bond be taken in full payment of the subscription of said Hammer and Rice." The minute book shows that the respondent "unanimously accepted" the proposal, and directed the secretary to issue the stock upon the assignment of the bond. The bond was assigned and later duly filed for record. The rights of

creditors are not involved. The appellant and Hammer were upon both sides of the bargain. The respondent was also represented by its third trustee. No one was wronged and no rule of public policy was violated. The holders of the bond knew what they were selling, and the respondent knew precisely what it was buying. The deal was made in the open, and the transaction was valid as between the parties. *Inland Nursery and Floral Co. v. Rice*, 57 Wash. 67, 106 Pac. 499; *Old Dominion Copper Mining & Smelting Co. v. Lewisohn*, 210 U. S. 206; *Kellerman v. Maier*, 116 Cal. 416, 48 Pac. 377.

It is further suggested that the sale of the appellant's stock is not binding upon the respondent. It suffices to say that it received, and still holds, the proceeds of the sale. *Harvey v. Sparks Brothers*, 45 Wash. 578, 88 Pac. 1108.

The respondent received the proceeds from the sale of the appellant's stock on the third day of January, 1911. The appellant is entitled to a judgment against the respondent for $1,500, with interest from the third day of January, 1911, at the legal rate, less $1,030.29, with legal interest from the 22d day of January, 1912. The judgment is reversed, with directions to enter a judgment in harmony with this opinion.

Crow, C. J., Ellis, Main, and Chadwick, JJ., concur.