[No. 13662. Department One. December 5, 1916.]

FRANK S. SHAW *et al.*, *Appellants*, v. GEORGE W. CARR *et al.*,
*Respondents.*[1]

CORPORATIONS—STOCK—SALE — RESCISSION — FRAUD — EVIDENCE —
SUFFICIENCY. A rescission of sale of stock for fraud is properly re-
fused where it is not shown by clear and convincing evidence that
plaintiffs were overreached in a business venture which they be-
lieved would be successful after full opportunity to investigate and
after full inquiry.

SAME—CAPITAL STOCK—IMPAIRMENT — GIFT TO CORPORATION—VA-
LIDITY. Where promoters of a corporation had received all of the
stock as fully paid up in consideration of rights and property trans-
ferred to the corporation, they may lawfully make a gift of part
of the stock to the corporation to be sold for its benefit as treasury
stock; and such return of stock is not void as an impairment of
the capital stock in violation of Rem. 1915 Code, § 3697.

SAME—SALE OF STOCK—RESCISSION — FRAUD — EVIDENCE — SUFFI-
CIENCY. Evidence that a company failed to meet its expectations as
to the practicability and salability of a machine does not warrant a
finding of fraud in the sale of stock, where there was other evidence
that the machines were practicable and that the failure of the com-
pany was due to want of sufficient working capital.

Appeal from a judgment of the superior court for King
county, Jurey, J., entered March 1, 1916, upon findings in
favor of the defendants, in an action for rescission, tried to
the court. Affirmed.

*H. E. Foster*, for appellants.

*Flick & Frater* (*C. Dell Floyd*, of counsel), for respond-
ents.

CHADWICK, J.—Plaintiffs brought this action for the re-
covery from defendants of the sum of two hundred and fifty
dollars which had been paid to defendants in money; the
cancellation of two promissory notes, one for $250, and one
for $1,000; and for the cancellation and surrender of two
deeds whereby plaintiffs conveyed to a corporation known as

[1]Reported in 161 Pac. 345.

the Modern Irrigation Company two certain tracts of land in King county.

The corporation was organized by certain of the defendants. It is alleged that defendants Carr, Jones, and Anderson fraudulently contrived, by misrepresentation and fraudulent statements and concealments, to sell to plaintiffs five thousand shares of the stock of the irrigation company in consideration of the sum of three thousand dollars, to be paid as above indicated. The court found in favor of the defendants. Two issues, one of fact, the other of law, are submitted by the appellants. The testimony is conflicting. The charge is fraud. From an examination of the entire statement of the facts, we are not prepared to say that the preponderance is not with respondents. It is certainly not shown by clear and convincing evidence that appellants were overreached. It must have occurred to the trial court, as it does to us, that appellants, after full opportunity to investigate and after full inquiry, engaged in a business venture which, at the time, seemed inviting, but which had only such prospects of success as were inspired by optimism.

The venture was not a success. Its failure is attributable, as it seems to us, to a lack of sufficient capital to manufacture and market its wares. We shall not go into an extended review of the testimony. It is enough that a broad view of the entire record has failed to convince us that appellants were induced to purchase the stock by any wilfully fraudulent inducements on the part of the respondents.

The irrigation company was organized with a capital stock of $50,000. The organizers—two of them—had certain contracts giving them the privilege of manufacturing, for a term of five years, a certain water motor and pump which, it was believed, had proved its practicability by actual test. There were also some physical assets in the way of motors and pumps, of no greater probable value than $2,000. Carr and Jones transferred their contracts and the personal property to the corporation in full payment of the capital stock,

all of which, except a nominal holding to Anderson, was is-
sued to them in equal proportion. Whereupon, in order to
provide a working capital for the company, the two incor-
porators mentioned, voluntarily and without consideration or
obligation on their part, turned back into the treasury of the
corporation 32,000 shares of the stock, to be held by it in
trust and sold for the benefit and use of the corporation.

The stock which appellants purchased was a part of this
stock. It is insisted that this retransfer of the stock was a
fraudulent manipulation; a dealing in its own stock by the
corporation, and an impairment of its capital stock under
the rule announced in *Barto v. Nix*, 15 Wash. 563, 46 Pac.
1033; *Tait v. Pigott*, 32 Wash. 344, 73 Pac. 364; *Union
Trust Co. v. Amery*, 67 Wash. 1, 120 Pac. 539; *Jorguson v.
Apex Gold Mines Co.*, 74 Wash. 243, 133 Pac. 465, 46 L. R.
A. (N. S.) 637; *Kom v. Cody Detective Agency*, 76 Wash.
540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073; and that the
stock, being, for these reasons, fictitious and fraudulent, no
consideration passed to appellants, and they are entitled to
a personal judgment against the principal respondents and
a reconveyance of the property transferred by them to the
present holders of the title, who are alleged to have taken
with notice.

The cases cited are all declarative of our statute, Rem.
1915 Code, § 3697, which discountenances an impairment of
the capital stock of a corporation at the expense of its assets.
The statute does not declare, and we know of no rule of public
policy that would require a holding, that a corporation can-
not acquire, by gift and for its own benefit, shares that had
theretofore been issued to an individual. The vice at which
the statute is directed is the disbursement of the acquired as-
sets of a company in the purchase of its own stock. If that
could be done, it would readily follow that the directors of a
corporation might, in consideration of a retransfer of their
stock, keep themselves financially whole, leaving nothing to
the creditors. Or, to put it another way, the stock is only

representative of the money worth of the corporation. If a trade in the stock impairs the money worth of the stock, it is proscribed. If it does not, it is not an unlawful thing.

That a return by a person of a part of the stock which had been issued to him, to be used for the benefit of the corporation, is not illegal was held in effect in *Davies v. Ball*, 64 Wash. 292, 116 Pac. 833, Ann. Cas. 1914 B. 750, where we quoted from 1 Cook, Stock and Stockholders (3d ed.), p. 66, § 46, as follows:

"The fact that the person to whom the stock is issued returns a part of it as a gift to the corporation or to trustees for the corporation to sell the same below par and put the proceeds in the corporate treasury for a working capital does not necessarily prove that the property was overvalued. The person receiving the stock may have been willing to sacrifice a part of his stock and property in order to make the rest more valuable."

Appellants make much of a finding of the court that the agreement giving the irrigation company the exclusive right to manufacture the motor and a "square hole bit" was, at the time appellants purchased the stock, and is now, worth the sum of $50,000; whereas it is, and was, utterly worthless. To measure the value of such a contract is exceedingly difficult. For that reason, we have followed the rule, where the facts invite it, of *Old Dominion Copper Min. & Smelting Co. v. Lewisohn*, 210 U. S. 206. In *Inland Nursery & Floral Co. v. Rice*, 57 Wash. 67, 106 Pac. 499, we said:

"Fraud to be actionable must result in injury, and it nowhere appears that injury has resulted to any one because of such exchange. It does not appear but that subsequent stockholders purchased with full opportunity for investigation into the condition and assets of the company, and that the stock they purchased was fully worth the sum paid therefor. If, therefore, subsequent stockholders obtained full value, there can be no element of injury or fraud as to them. No complaint is made as to creditors."

A fair reading of the testimony discloses the fact that appellants did not invest because of any allurement attributable

to the amount of the capital stock measured in dollars. They knew the success of the company depended upon the manufacture and sale of a new and novel article. They invested because they believed in the practicability and salability of the machine. Their testimony reaches no further than to show that the company has failed to meet their expectations. On the other hand, there is the testimony of engineers and others, whose judgment is not impeached, that the machine is entirely practicable, while the whole testimony shows that the company has so far failed for the want of a sufficient working capital.

We find no error, and the judgment is affirmed.

MORRIS, C. J., MAIN, HOLCOMB, and ELLIS, JJ., concur.